The undersigned respectfully dissents from the majority finding that plaintiff's alleged disability is causally related to the September 27, 2000 shock incident while employed with defendant. The greater weight of the evidence fails to establish a causal connection between plaintiff's September 27, 2000 shock incident and his physical complaints and condition.
Plaintiff has the burden of proving by the preponderance of the evidence that his alleged accident or event on September 27, 2000 was a causal factor in the development of his condition. Holley v. Acts,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003). Plaintiff has failed to meet his burden of establishing a causal relationship between his shock incident on September 27, 2000 and his alleged disability. The greater weight of the evidence proves that plaintiff's complaints and his alleged inability to work pre-existed his September 2000 injury.
On July 28, 2000, when hired by defendant, plaintiff was already on Social Security Disability. Following treatment for the September 2000 injury, plaintiff returned to work for defendant on October 2, 2000 full-duty and without any restrictions. Plaintiff continued to work full-duty for defendant with no complaints until early March 2001 when he requested a medical leave of absence. On the disability form completed by plaintiff on March 20, 2001, plaintiff listed back pain as his reason for applying for disability. Plaintiff's physician provided documentation to support plaintiff's claim for disability, stating that plaintiff's diagnosis was back pain and bulging disc with an onset date of 1 ½ years prior. *Page 12 
On July 9, 2001, plaintiff presented to Dr. Breuer for an evaluation for low back pain of two years duration, numbness in all four extremities, and weakness in all four extremities for one and a half years in duration. Plaintiff told Dr. Breuer that he sustained a shock injury in September 2000. Dr. Breuer testified that during his examination, plaintiff could not do certain tasks when being tested, but plaintiff could perform those same tasks in other circumstances when he was walking. Dr. Breuer testified that plaintiff's symptoms were not related in any way to the electrocution in plaintiff's right arm nine months previously.
On August 14, 2001, plaintiff treated with Dr. Hardy, who found no evidence of myelopathy, but rather found that plaintiff was embellishing his condition. Dr. Hardy concluded that after an extensive work-up including an MRI of the spine, there was no definable abnormality. Dr. Hardy testified that plaintiff's complaints were not typical of electrical injury.
On May 16, 2005, plaintiff began treating with Dr. Lopez, who performed an MRI on plaintiff's cervical spine revealing moderate cervical stenosis, due to a degenerative condition, which was sufficient to cause symptoms from the neck down, including numbness, tingling, and weakness in the arms and legs, bladder incontinence, and gait instability. Dr. Lopez noted that plaintiff's B-12 level was low and testified that such deficiency can cause numerous neurological problems, including those that plaintiff was having. Dr. Lopez testified that she was unsure as to whether plaintiff's symptoms were secondary to the alleged shock injury. Furthermore, Dr. Lopez also testified that she was not aware of any literature or documentation supporting any theory that there can be delayed symptoms associated with shock injury.
The majority gives greater weight to and relies on the opinions of Dr. Liu and Dr. Millan. However, Dr. Liu admitted there were other possible causes for plaintiff's condition considering the fact that she did not treat plaintiff until approximately three and a half years following the *Page 13 
September 2000 shock incident. Dr. Liu testified that she would defer to physicians that treated plaintiff prior to her treatment of plaintiff in 2003 and to any physicians that had treated plaintiff since August 9, 2004 when she last saw plaintiff.
Although Dr. Millan testified that plaintiff's symptoms were consistent with having sustained an electrical shock injury, Dr. Millan acknowledged that he had never reviewed any of the MRI's performed on plaintiff prior to 2006. Dr. Millan testified that it might have been beneficial for him to review the previous MRI's in rendering treatment to plaintiff. Given the fact that he had not reviewed plaintiff's MRI studies and that he did not treat plaintiff until approximately two years following the 2000 incident, Dr. Millan's opinion regarding a causal connection between the incident and plaintiff's condition should not be afforded greater weight than the opinions of Dr. Breuer or Dr. Hardy.
Based upon the greater weight of the evidence, plaintiff has failed to establish a causal connection between the September 27, 2000 shock incident and his alleged disability. For the foregoing reasons the undersigned respectfully dissents from the majority.
This the 14th day of August, 2008.
 S/______________________ BUCK LATTIMORE COMMISSIONER